UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MICHAEL ONYSKO, | : |
| Plaintiff, | : |
|  | : Civil Action No. 3:15-CV-1594 |
| v. | : |
| DELAWARE & HUDSON RAILWAY COMPANY, INC. d/b/a C.P. RAIL SYSTEM, | : (Judge Kosik) |
| Defendant. | : |

# MEMORANDUM

This action, filed on August 14, 2015, by Plaintiff, seeks to hold Defendant liable for personal injuries sustained by Plaintiff as a result of an alleged violation of the Federal Employers' Liability Act ("FELA")[1] and the Federal Safety Appliance Act ("FSAA").[2] Currently before the Court is Plaintiff's motion for partial summary judgment. (Doc. 17). The motion has been fully briefed by both parties, and is now ripe for disposition. For the reasons that follow, the Court will grant in part and deny in part Plaintiff's motion.

## I. BACKGROUND

Plaintiff, a railroad worker, alleges he was injured on August 7, 2014, while working at Defendant's Binghamton, New York rail yard. (Doc. 17, Pltf.'s SOF ¶1). In the early hours of the morning, while assisting in the make-up of freight trains used by Defendant in its rail

---

[1] 45 U.S.C. § 51.

[2] 49 U.S.C. § 20301 et seq.

operations, Plaintiff chose to cross over a stationary rail car to get to the other side of the track to continue switching rail cars, as opposed to walking around a draft of cars, which could potentially be over a mile long. (Id., ¶¶ 4-5; Doc 22, Pltf.'s Reply Br., p. 5). The specific rail car, CP 337299, was equipped with a crossover board/end platform, which Plaintiff contends is a type of running board that is placed on the end of certain train cars to allow for safe movement between train cars. (Doc. 17, ¶ 5; Doc. 18, Pltf.'s Br., p. 2).

As Plaintiff was traversing the crossover board, it suddenly gave way, sending him to the ground where he struck his back and head on the rail and ground. (Doc. 17, ¶¶ 6-8). An inspection of rail car CP 337299 revealed that the crossover platform had a missing bolt that appeared to be missing from its bracket for some time. (Id., ¶10). Defendant subsequently posted a safety alert, informing its employees that an "employee [was] injured when using end platform," and that upon inspection of the end crossover platform, it was identified that a bolt was missing. (Doc. 17-7, Safety Alert).

Plaintiff also provides an expert affidavit opining that in addition to the crossover platform's defect, the ladder on the same rail car was also defective. (Doc. 23-8, Aff. of D.M. Greig). Plaintiff contends that these are separate violations of the FSAA. Plaintiff now moves for partial summary judgment as to the issue of liability.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a

reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. Anderson, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec, Co., 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief." U.S. Bank, Nat'l Ass'n v. Greenfield, No. 1:12-CV-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2-3).

### III. DISCUSSION

#### 1. Evidentiary Objections

As an initial matter, Defendant has set forth evidentiary objections to all of Plaintiff's exhibits and documents used in support of his motion for partial summary judgment. In his reply brief, Plaintiff counters that the documents used in support of his motion are all properly

authenticated and before the Court for our consideration.

Defendant argues that Plaintiff's motion should be denied because it is "not supported by evidence in the record and relies upon inadmissible hearsay and [an] unsworn 'report' from Plaintiff's expert ...." (Doc. 21, Def.'s Br. In Opp, p. 2). Specifically, Defendant argues that the following documents used to support Plaintiff's motion do not satisfy the requirements set forth in Federal Rule of Civil Procedure 56 or Local Rule 56.1: a transcript of an interview conducted by Defendant's district claims representative of Plaintiff (Doc. 17-2, Pltf.'s MPSJ), a Crew Information Sheet (Doc.__, Ex___),[3] photographs (Doc.17-3, 4), an Asset Damage Report (Doc.17-5), Mechanical Inspection Report (Doc.17-6), a Safety Alert (Doc. 17-7), and an expert report from D.M. Greig (Doc.17-11). We find Defendant's argument raises both an authentication issue and hearsay issue to the documents, and we will address each in turn.

A party moving for partial summary judgment must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials ..." in order to support his assertion that a fact cannot be genuinely disputed. Fed.R.Civ.P. 56(c)(1)(A).

### a. Authentication

In terms of authentication of documents, Federal Rule of Evidence 901(a) states, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The burden of proof for authentication is slight. McQueeney v. Wilmington

---

[3] The Defendant mentions the "Crew Information Sheet" but does not specifically cite to the document. A review of the record by the Court does not reveal any such document. The Court additionally notes that Plaintiff does not mention or cite to a "Crew Information Sheet."

Trust Co., 779 F.2d 916, 928 (3d Cir. 1985); see also Link v. Mercedes-Benz of North America, 788 F.2d 918, 927 (3d Cir. 1986) (stating that the "showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility.").

Further, when a particular document has been produced by a party pursuant to a discovery request, "there is a sufficient foundation for a jury to determine that [the] document is what it is purported to be ...." Lexington Ins. Co. v. Western Pennsylvania Hosp., 423 F.3d 318, 329 (3d Cir. 2005); see McQueeney, 779 F.2d at 929 ("[T]he fact that copies were produced by the plaintiff in answer to an explicit discovery request for his Sea Service Records, while not dispositive on the issue of authentication, is surely probative."); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 286 (3d Cir. 1983), *rev'd on other grounds*, 475 U.S. 574 (1986) ("[The exhibits] have the appearance, content, and substance typical of [board] minutes. They were produced by the defendants pursuant to a discovery order in this proceeding. They come from a source where such minutes are likely to be kept .... No more evidence was needed to establish a prima facie case of authenticity than the record contains.") (citations omitted).

As to the authenticity of the interview transcript of Plaintiff, conducted by Defendant's district claims representative (Doc. 17-2), photographs (17-3,4), the Asset Damage Report (Doc.17-5), the Mechanical Inspection Report (Doc.17-6), and the Safety Alert (Doc. 17-7), we agree that these documents are what they purport to be. As Plaintiff argues, these documents were produced by Defendant pursuant to Plaintiff's discovery requests. Furthermore, the documents Plaintiff uses to support his instant motion were used and authenticated in the

numerous depositions held in this case. (Doc. 23-5, SOF, Dep. of John Ragard, mechanical supervisor; Doc. 23-6, SOF, Dep. of Pltf.; Doc. 23-7, SOF, Dep. of Michele Louise Malski, supervisor trainmaster). Because Rule 901(a) does not require the documents to be probative of a particular fact, for authentication purposes, but rather, only requires that there be sufficient evidence for a jury to conclude that the document "is what its proponent claims it to be," we conclude that the authentication requirements for these documents are satisfied. Fed. R. Evid. 901(a); see In Re Japanese Elec. Prods. Antitrust Litig., 723 F.2d at 285.

**b. Hearsay**

In conjunction with the authenticity argument is Defendant's contention that the "series of documents" Plaintiff attaches in support of his motion are inadmissible under the hearsay rules. Defendant states that because there is "no indication of the admissibility of the documents Plaintiff uses to support his motion, they must be deemed inadmissible ...". (Doc. 21, Def.'s Br. in Opp., pp. 4-5). When a party objects on the grounds that the material that has been cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence, the party offering the material must either (1) show that the material is admissible as presented, or (2) explain the admissible form that is anticipated. Fed. R. Civ. P. 56(c)(2) advisory committee's note (2010); see State Farm Fire & Cas. Co. v. Steffen, 948 F. Supp. 2d 434, 438 (E.D. Pa. 2013), *appeal dismissed*, Civ. No. 13-2367 (3d Cir. 2013).

We disagree with Defendant's conclusion that Documents 17-2 through 17-7 may not be considered at the summary judgment stage. "The rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are *capable of being admissible at trial*." Fraternal Order of Police, Lodge 1 v. City of Campden, Civ. No. 15-1963, – F.3d – , 2016

WL 6803036 (3d Cir. Nov. 17, 2016) (citing Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995) (emphasis added)).  The Third Circuit Court of Appeals has provided the following when considering hearsay statements with regards to a motion for summary judgment:

> The court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial. The proponent need only "explain the admissible form that is anticipated."  Thus, in ruling on Defendants' motion for summary judgment, the district court should have limited its inquiry to determining if the out-of-court statements Plaintiffs were relying on were admissible at trial, and they clearly were.  Plaintiffs identified the out-of-court declarants ... and noted their availability to testify.
>
> ... In Philbin v. Trans Union Corporation ... the hearsay statement by [an] unknown individual [was] not 'capable of being admissible at trial,' ... and could not be considered on a motion for summary judgment.  Here, Plaintiffs identified the third-party declarants, and nothing suggests that those declarants would be unavailable to testify at trial.  That is all that was required to survive that aspect of Defendants' motion for summary judgment.

Fraternal Order of Police, 2016 WL 2803036, at * 3 (internal citations omitted).

      The transcript of an interview conducted by Defendant's district claims representative of Plaintiff (Doc. 17-2), photographs (Doc.17-3, 4), Asset Damage Report (Doc.17-5), Mechanical Inspection Report (Doc.17-6), and Safety Alert (Doc. 17-7) all have been authenticated by either Defendant's mechanical supervisor, trainmaster, and/or Plaintiff at his or her respective deposition in this matter.  Further, there is every indication that each person is available to testify at trial.  "[This] is all that is required" in considering these statements and documents at this stage, and we therefore find that they are properly before this Court for consideration on Plaintiff's motion.  Id.

Moreover, we find that in addition to Plaintiff showing that the documents are admissible as presented, he has further explained the admissible form of the documents that is anticipated at trial. Specifically, the interview transcript of Plaintiff by the district claims representative (Doc. 17-2), photographs (Doc.17-3, 4), Asset Damage Report (Doc.17-5), the Mechanical Inspection Report (Doc.17-6), and the Safety Alert (Doc. 17-7), would all fall under the business records exception - Rule 803(6) exception to the rule against hearsay, as well as admissions under Rule 801(d)(2). Therefore, the documents are admissible.

Finally, we conclude that Plaintiff has cured any defect regarding his expert report given that he has attached an affidavit by the expert, D.M. Greig. (Doc. 23-8, Pltf.'s SOF, Aff. of D.M. Greig). Given that we have established Plaintiff's supporting documents to his motion are properly before this Court in considering the partial summary judgment motion, we now address the substantive argument and counter-argument of both Plaintiff and Defendant.

**2. Substantive Argument - The Federal Safety Appliance Act**

Plaintiff brings a cause of action under FELA based upon defective and unsafe equipment, *i.e.*, the running board/platform and ladder of a rail car. The FSAA is an amendment to FELA, and provides the statutory requirements for safety appliances on all railroad cars. Urie v. Thompson, 337 U.S. 163, 189 (1949). Under its terms, a railroad is liable for an employee's injury or death caused by a violation of the FSAA. Norfolk & W. Ry. v. Hiles, 516 U.S. 400, 408 n. 11 (1996). An FSAA violation constitutes per se negligence for purposes of employer liability under FELA. Ries v. Nat'l R.R. v. Passenger Corp., 960 F.2d 1156, 1159 (3d Cir. 1992). The FSAA provides "the basis for the claim, and the FELA provides the remedy." Finley v. Nat'l R.R. Passenger Corp., Civ. No. 94-3594, 1997 WL 59322, at *5 (E.D. Pa. Feb. 12, 1997)

(quoting Beissel v. Pittsburgh and Lake Erie R.R. Co., 801 F.2d 143, 145 (3d Cir. 1986)).

Thus, the standard of proof imposed upon a plaintiff alleging a FSAA claim is less stringent than the standard employed with regard to a FELA negligence claim. Eckert v. Aliquippa & Southern R.R. Co., 828 F.2d 183, 187 (3d Cir. 1987). Under FSAA, the "test of a jury case is simply whether the proofs justify the conclusion a violation played any part, even the slightest, in producing the injury for which damages are sought." Kennedy v. Norfolk Southern Ry. Co., 553 F. Supp. 2d 516, 523 (W.D. Pa. Apr. 4, 2008) (citing Eckert, 828 F.2d at 187). However, "[i]f the plaintiff's negligence was the sole cause, then the violation of the [FSAA] could not have contributed in whole or in part to the injury." Id.

Plaintiff contends there are no genuine issues of material fact as to Defendant's liability because it violated the FSAA with respect to a running board/end platform and ladder on a gondola railcar.[4] Plaintiff argues that because there was a defective crossover board and ladder on the gondola railcar that caused Plaintiff's injuries, Defendant is absolutely liable for his injuries. Thus, Plaintiff contends that he is entitled to summary judgment on the issue of liability. Defendant counters that a "crossover platform," "crossover board," or "end platform" on a gondola car, do not fall within the purview of the FSAA. Specifically, Defendant contends that there is no evidence to support that a crossover platform/board or end platform is a running board.

The statute does not define the generic term "safety appliance" but does provide a specific list of equipment a railroad must have on each type of car. Finely v. Nat'l R.R. Passenger Corp.,

---

[4] Plaintiff contends that an "end platform" or "cross-over board/platform" are a type of running board placed at the end of a train car. For our purposes, we will hereinafter refer to this as a "crossover board."

Civ. No. 95-3594, 1997 WL 59322, at *5 (E.D. Pa. Feb 12, 1997).  Section 20302(a) provides that a railroad carrier, such as Defendant, may use or allow to be used on any of its railroad lines:

> (1) a vehicle only if it is equipped with –
> ...
> (C) secure ladders and running boards when required by the Secretary of Transportation, and, if ladders are required, secure handholds or grab irons on its roof at the top of each ladder ....

49 U.S.C. § 20302.

The specific rail car at issue in this case is CP 337299, a gondola car.  (Doc. 23-7, SOF, Dep. of Michele Louise Malski, supervisor trainmaster, p. 32:1-2).  The Court notes that pursuant to the Code of Federal Regulations, there appear to be regulations for four types of gondola cars: 49 CFR § 231.2 - high-side gondolas with fixed ends; 49 CFR § 231.3 - drop-end high-side gondola cars; 49 CFR § 231.4 - fixed-end low-side gondola cars; and 49 CFR § 231.5 - drop-end low-side gondola cars.  While it is not entirely clear as to which type of gondola car is at issue in this case,[5] that inquiry is not central to the issue at hand, given that none of the regulations for any type of gondola car expressly requires "running boards."

While Plaintiff acknowledges that "gondola cars are not prescribed to have end platforms pursuant to the statutory construction" of the FSAA, Plaintiff contends that once a railroad provides such a safety appliance, whether mandated or not, it is obligated to provide that appliance in a safe manner and without defect.  (Doc. 18, Pltf.'s Br., p. 9).  In support of this contention, Plaintiff cites to Shields v. Atlantic Coast Line R.R. Co., 350 U.S. 318 (1956), wherein the plaintiff was injured when a board on which he was standing on top of a tank car,

---

[5] The Court gleans from Plaintiff's Reply Brief (Doc. 22) that gondola car CP 337299 is a high-side gondola with fixed ends.  (Doc. 22, p. 5).

broke, which caused him to fall. Shields, 350 U.S. at 319. The defendant in Shields argued that the regulations did not require running boards at the top of dome tanker cars, and therefore, even if one was placed there, such a dome running board fell outside the reach of the FSAA. Shields, 350 U.S. at 390.

The Supreme Court found differently, stating:

> At best, appliances standardized in Commission regulations represent the minimum of safety equipment, and there is no prohibition of additional safety appliances. If a dome running board is provided by the railroad or the makers of the car and used by the railroad as an appliance necessary for the use of the car, it must be a safe board as required by [section 2 of the Safety Appliance Act].

Shields, 350 U.S. at 391.

Similarly, in Thomas v. Kansas City Southern Ry. Co., 305 S.W.2d 642 (Tex.Civ.App.-Beaumont, 1957), the plaintiff was injured when a board along the top of a side wall of a gondola car split, causing him to fall from the car when he was using it for support. Thomas, 305 S.W.2d at 644. The Thomas court found that while the board was not required by the FSAA,

> The board's position rendered it inevitable that frequently, if not invariably, it would be grasped by any one [*sic*] entering or leaving the car ... we think it must be inferred that it was in recognition of this fact and with the view of making it easier and safer for people to grasp them that thinner boards were used across the heads of ladders than elsewhere. In addition, the boards at the heads of ladders were regularly used by appellee's employees as handholds, and this practice was known to appellee. The conclusion is inescapable, therefore, that the board that gave way with appellant was both designed and intended as a handhold, and as a practical matter was a handhold, even though considerations other than the installation of a handhold accounted for its being on the car in the first instance... [and is] within the scope of the ... Safety Appliance Acts.

Thomas, 305 S.W.2d at 645.

Defendant's contention that there is no support for the assertion that the crossover platform was a running board, is without merit. The obvious purpose of the crossover platform was to provide a secure flooring for workers to safely traverse. Shields, 350 U.S. at 389. Further, there is numerous testimony from Defendant's own employees discussing the purpose of the crossover platform and that it is a safety appliance. (Doc. 24-1, Dep. Louis Vagliardo, pp. 13, 15, 16, 20, 23-24; Doc. 23-5, Dep. John Ragard, pp. 19-20, 25, 29, 30). This, in conjunction with the fact that the FSAA's purpose is to primarily protect the safety of employees and is to be liberally construed, we find that the crossover platform comes within the meaning of the term "running boards," and is a safety appliance. See Shields, 350 U.S. at 389; Brady v. Terminal R. Ass'n of St. Louis, 303 U.S. 10, 15 (1938).

The cases relied upon by Plaintiff to support his position that the running board used on the gondola car in question was a safety appliance within the meaning of the FSAA, are persuasive. Here, Plaintiff alleges he was injured when the crossover board upon which he was traversing broke and caused him to fall due to a missing bolt. While crossover boards are not specifically required by the FSAA on gondola cars, it nonetheless constitutes a safety appliance for the purpose of the FSAA, because once Defendant undertook to provide this board, it had a duty to ensure that the appliance was safe and secure, as required by the FSAA. Shields 350 U.S. at 322-324; Thomas 305 S.W.2d at 645-646 ("we think it was the intent of Congress to require that all appliances which may fairly be classified as appliances mentioned in the Acts shall be secure, irrespective of whether the Acts actually require that cars be equipped with the appliances in the first instance"); cf Grothusen v. Nat'l R.R. Passenger Corp., 603 F. Supp. 486, 489 (E.D. Pa. March 5, 1984) (stating that if plaintiff "had fallen after one of the curved handrails had

broken or snapped, *Shields* would require a conclusion that a violation of the SAA had occurred.").

The fact that the board was not a standardized appliance specifically mandated does not preclude a judicial determination that it was nevertheless a safety appliance within contemplation of the Safety Appliance Acts. See Shields, 35- U.S. 318; Thomas 305 S.W.2d 642.  Here, Plaintiff has properly supported his motion for partial summary judgment as to the crossover board.  We find no issue of material fact as to the defective crossover board.  Defendant has not come forward with any affirmative evidence, affidavit or otherwise, to either support its assertions of fact or in response to Plaintiff's assertions of fact.[6]  Therefore, we will grant Plaintiff's motion for partial summary judgment as to Defendant's liability for the defective crossover board.

Finally, with regards to the alleged dented ladder, there exists genuine issues of material fact that preclude a granting of summary judgment on this issue.  Plaintiff cites to Hudson v. Southern Pacific Transp. Co., 751 P.2d 800 (Or. App. 1988), to support his contention that a bent stile extension on a ladder is a defective ladder.  However, this case is distinguishable on both its facts and procedural posture.  Procedurally, the Hudson case was before a jury.  Factually, the Hudson plaintiff was actually on the ladder attached to a boxcar when he slipped and was unable to grab the ladder stile extension because it was bent.  Hudson, 751 P.2d at 801.  Here, Plaintiff's own testimony was that he was able to grab the ladder, but unable to support his weight with his

---

[6] The Court observes that Defendant, in response to Plaintiff's motion for partial summary judgment, rests on a categorical denial to each of Plaintiff's assertions of fact, basing its denial not on any countervailing evidence of record, but rather, on its position that Plaintiff's facts are not supported by admissible evidence.  We have discussed the admissibility of Plaintiff's evidence, *supra*.

one hand under the sudden give of the crossover board. (Doc. 17-2, pp. 11-12). As Defendant argues, there is no indication that the alleged bent or dented ladder played any part in producing the injury for which Plaintiff seeks damages. Thus, we will deny Plaintiff's motion for partial summary judgment against Defendant as to Defendant's liability for the alleged defective ladder.

## IV.  CONCLUSION

For the reasons set forth above, we will grant in part and deny in part Plaintiff's motion for partial summary judgment. An appropriate order follows.